UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - -- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
RASHID SALAAM,

                        Plaintiff,                              **FIRST AMENDED COMPLAINT**

                 -against-                                 14 CV 1703 (PKC) (MDG)

THE CITY OF NEW YORK,                             **JURY TRIAL**
DETECTIVE DANIEL MULCAHY (TAX 934101),       **DEMANDED**
DETECTIVE JOHN PEREZ (TAX 907040),
DETECTIVE ROBERT CIOLINO (TAX 903622), and
DETECTIVE TIMOTHY CINQUE (TAX 933901),

                        Defendants.
- - - -- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

       Plaintiff, Rashid Salaam, by his attorneys, Reibman & Weiner, as and for his First Amended Complaint, hereby alleges as follows, upon information and belief:

## PARTIES, VENUE and JURISDICTION

       1.     At all times hereinafter mentioned plaintiff Rashid Salaam was an adult male resident of Kings County, within the State of New York.

       2.     At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

       3.     At all relevant times hereinafter mentioned, defendant DANIEL MULCAHY (TAX 934101), was employed by the City of New York as a Detective with the

NYPD. Mulcahy is sued herein in his official and individual capacities.

4. At all relevant times hereinafter mentioned, defendant DETECTIVE JOHN PEREZ (TAX 907040), was employed by the City of New York as a Detective with the Queens Warrant Squad of the NYPD. Defendant Perez is sued herein in his official and individual capacities.

5. At all relevant times hereinafter mentioned, defendant DETECTIVE ROBERT CIOLINO (TAX 903622), was employed by the City of New York as a Detective with the Queens Warrant Squad of the NYPD. Defendant Ciolino is sued herein in his official and individual capacities.

6. At all relevant times hereinafter mentioned, defendant DETECTIVE TIMOTHY CINQUE (TAX 933901), was employed by the City of New York as a Detective with the Queens Warrant Squad of the NYPD. Defendant Cinque is sued herein in his official and individual capacities.

7. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

8. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where the plaintiff and defendant City of New York reside, and where the actions complained of herein occurred.

9. That plaintiff timely served a Notice of Claim on the municipal defendant and complied with all conditions precedent to commencing an action under state law.

10. At least thirty days have elapsed since service of plaintiff's Notice of Claim and adjustment and payment thereof has been neglected or refused.

11. That the within action has been initiated within one year and ninety days of the happening of the events of which plaintiff complains.

## RELEVANT FACTS

12. On August 28, 2013 (the "Date of the Arrest"), at or about 8:00 a.m., plaintiff was lawfully present inside of his home located at 848 Herkimer Street, County of Kings, City and State of New York (the "Location of the Arrest").

13. At this time, defendants Perez, Ciolino, and Cinque forcibly entered plaintiff's home and seized him at gunpoint.

14. Plaintiff was not engaged in any illegal or suspicious activity and he complied with the defendants' requests.

15. The defendants were not invited into the premises nor was their entry consented to by the plaintiff, or any other individual authorized to so consent.

16. There were no exigent circumstances present that would permit defendants to enter the premises absent a warrant or invitation.

17. The defendants did not display a warrant to justify their entry into the premises and refused to produce one after the plaintiff asked while the parties were inside

the premises.

18. Plaintiff was handcuffed and searched by the defendants, who then searched the premises.

19. The searched yielded no evidence of any criminal activity.

20. Despite the absence of any evidence of criminal activity, the defendants formally arrested the plaintiff.

21. Plaintiff was then transported to the 115th Precinct in Queens County, where he was held for a number of hours before he was taken to Queens County Central Booking, where he was held in custody for an additional period of many hours.

22. While in custody, plaintiff was placed in a line up by defendant Mulcahy, where the defendants claim plaintiff was identified by Humberto Villa as having robbed him almost nine months prior to plaintiff's arrest, on January 1, 2013.

23. The line up consisted of various fillers who bore little resemblance to plaintiff.

24. While in custody, defendant Mulcahy informed plaintiff that Humberto Villa had previously falsely identified several individuals as being involved in the robbery.

25. Accordingly, defendant Mulcahy knew that Humberto Villa was unreliable.

26. Nonetheless, plaintiff was eventually arraigned on a criminal complaint containing false allegations sworn to by defendant Mulcahy and Humberto Villa.

27. The individual defendants knew, or has reason to know, that these and

4

other allegations were false.

28. Following his arraignment, plaintiff was detained by the City of New York for several days.

29. Plaintiff's case was presented to the grand jury on September 6, 2013, and the grand jury dismissed the charges against plaintiff.

30. Plaintiff was released from custody on September 7, 2013.

31. Another individual, Ramell Hurdle, was arrested for the same robbery of Humberto Villa on February 13, 2012, and eventually pleaded guilty to charges related to this robbery on February 18, 2014.

32. Pursuant to his plea, Mr. Hurdle was sentenced to a conditional discharge and was ordered to stay away from Mr. Villa for five years pursuant to an order of protection

33. There was no forensic evidence placing plaintiff at the scene of the robbery.

34. In fact, upon being taken into custody, the plaintiff provided the defendants with the names of alibi witnesses who were with him when the alleged robbery took place.

35. Despite the fact the Mr. Villa was known by the defendants to be unreliable, the defendants nonetheless caused plaintiff to be prosecuted.

36. The individual defendants had several meetings with the Queens County District Attorney's Office during which they falsely represented that the

identification procedures, including the line up identification, was proper and that Humberto Villa's allegations were reliable.

37. The defendants also presented these false allegations in several reports and items of paperwork, including but not limited to, the Complaint Room Screening Sheet

38. By charging plaintiff with this robbery, defendants would be able to claim that unsolved robbery was now closed, regardless of whether there was actually any evidence linking plaintiff to any of the robbery.

39. The individual defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

40. That at all times relevant herein, the defendants, were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

**FIRST CAUSE OF ACTION**

41. Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

42. Defendants willfully and intentionally seized, searched, detained and arrested plaintiff without probable cause, and without a reasonable basis to believe such cause existed.

43. Defendants willfully and intentionally subjected plaintiff to criminal

6

process through the making of false or materially misleading statements and without probable cause to believe that these plaintiff could be successfully prosecuted, and did so without a reasonable basis to believe that such conduct was appropriate, reasonable, lawful or necessary.

44. By so doing, the individual defendants, individually and collectively, subjected the plaintiff to false arrest and imprisonment, unlawful searches of person and property, denial of due process and a fair trial, malicious prosecution and malicious use and abuse of process, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

45. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional, physical and economic injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

46. Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

47. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

48. Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of

their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

49. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice and custom of utilizing illegal and impermissible searches, arrests and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

50. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD

51. The aforementioned customs, practices, procedures and rules of the

8

CITY and the NYPD include, but are not limited to, the following unconstitutional practices:

    a.    Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

    b.    Making arrests without probable cause and/or fabricating or withholding evidence to justify arrests;

    c.    Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

    d.    Retaliating against officers who report police misconduct; and

    e.    Failing to intervene to prevent the above-mentioned practices when such intervention is reasonably available.

52. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following, non-exhaustive list of civil actions:

    a.    *Thompson v. City of New York,* 10-CV-3603 (ARR) (SMG) (E.D.N.Y.);

    b.    *Lotorto v. City of New York,* 10-CV-1223 (ILG) (JMA) (E.D.N.Y.);

    c.    *Zabala v. City of New York,* 37711/2010 (Sup. Ct., Kings Co.);

    d.    *Ashe v. City of New York,* 09-CV-9696 (GBD) (THK) (S.D.N.Y.);

    e.    *Long v. City of New York,* 09-CV-9216 (AKH) (S.D.N.Y.);

    f.    *Moise v. City of New York,* 09-CV-9855 (DC) (JLC) (S.D.N.Y.)

    g.    *Taylor-Mickens v. City of New York,* 09-CV-7923 (RWS) (SD.N.Y.)

    h.    *Carmody* v. *City of New York,* 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207

    i.    *McMillan* v. *City of New York,* 04-CV-3990 (FB) (RML) (E.D.N.Y.);

    j.    *Avent* v. *City of New York,* 04-CV-2451 (CBA) (CLP) (E.D.N.Y.):

    k.    *Smith* v. *City of New York,* 04-CV-1045 (RRM) (JMA) (E.D.N.Y.);

    l.    *Powers* v. *City of New York,* 04-CV-2246 (NGG) (E.D.N.Y.);

    m.    *Dotson* v. *City of New York,* 03-CV-2136 (RMB) (S.D.N.Y.);

    n.    *Nonnemann* v. *City of New York,* 02-CV-I0131 (JSR) (AJP) (S.D.N.Y.);

    o.    *Richardson* v. *City of New York,* 02-CV-3651 (JG) (CLP) (E.D.N.Y.);

    p.    *Barry* v. *New York City Police Department,* 01-CV-10627 (CBM) (S.D.N.Y.);

    q.    *Walton v. Safir,* 99-CV-4430 (AKH) (S.D.N.Y.);

    r.    *White-Ruiz v. The City of New York,* 93-CV-7233 (DLC) (MHD) (S.D.N.Y.);

    s.    *Ariza v. City of New York,* 93-CV-5287 (CPS) (E.D.N.Y.);

53.    In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

54.    Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary

10

action, the NYPD either simply issues a verbal warning or drops the charges altogether.

55. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

56. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

57. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional, physical and economic injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

### THIRD CAUSE OF ACTION

58. Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

59. Plaintiff was subjected to false imprisonment and malicious prosecution by the defendants.

60. At no time did defendants have any legal basis for arresting or imprisoning plaintiff, or commencing criminal process against him, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable or otherwise appropriate.

61. The defendants are therefore liable under state law to plaintiff for false imprisonment and malicious prosecution.

62. By reason thereof, defendants have caused plaintiff to suffer emotional and physical injuries, mental anguish, the loss of his constitutional rights, and unlawful incarceration.

### DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

i. On the First Cause of Action, damages in a substantial sum of money against the individual defendants in an amount to be determined at trial;

ii. On the First Cause of Action, punitive damages in a substantial sum of money against the individual defendants in an amount to be determined at trial;

iii. On the Second Cause of Action, damages in a substantial sum of money against the City of New York in an amount to be determined at trial;

iv. On the Third Cause of Action, damages in a substantial sum of money against the individual defendants in an amount to be determined at trial;

v. On the Third Cause of Action, punitive damages in a substantial sum of money against the individual defendants in an amount to be determined at trial;

vi. On the Third Cause of Action, damages in a substantial sum of money

     against the City of New York in an amount to be determined at trial;

vii. Statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, as well as disbursements, and costs of this action; and

viii. such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
   August 28th, 2014

            REIBMAN & WEINER


        By:  /s/
          Jessica Massimi (JM-2920)
          Attorneys for Plaintiff
          26 Court Street, Suite 1808
          Brooklyn, New York 11242
          (718) 522-1743